IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MELANIE MARSHALL**,

        Plaintiff,

v.                                        Hon.
                                              Case No. 21-

**LIFE INSURANCE COMPANY
OF NORTH AMERICA**,
a Pennsylvania corporation,

        Defendant.

_____/

## COMPLAINT

Plaintiff, MELANIE MARSHALL, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

### I.    Jurisdiction and Venue

1)    This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2) The Henry Ford Health System Health and Welfare Benefit Plan (the "Plan") consists of, *inter alia*, a long-term disability insurance plan and life insurance policy with a waiver of premium due to total disability, which is sponsored and administered by Henry Ford Health System ("HFHS") and underwritten by Defendant Life Insurance Company of North America ("LINA").

3) 29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials. Plaintiff ("Ms. Marshall") has either exhausted all of her appeals or has been denied access to a meaningful and/or full and fair pre-suit appellate review. This matter is ripe for juridical review.

4) Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II. Nature of Action

5) This is a claim seeking long-term disability income benefits and a waiver of life insurance premiums pursuant to the Plan, which is sponsored and administered by HFHS and underwritten by LINA, and which Plan was intended to provide long-term disability income benefits and ongoing life insurance coverage with a waiver of premium due to total

disability to HFHS employees, including Ms. Marshall.  This action is brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

### III.   The Parties

6) Ms. Marshall is 61-years-of-age.  She was, and continues to remain, a resident of Southgate, Michigan.

7) LINA is a Pennsylvania corporation conducting insurance-related business in Michigan.  Upon information and belief, LINA's resident agent for service of process is CT Corporation System, 40600 Ann Arbor Rd. East, Suite 201, Plymouth, MI  48170.

8) During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to her employment with HFHS, Ms. Marshall received coverage under the Plan as a "participant," as defined by 29 U.S.C. § 1002(7).  This claim relates to benefits due under the above-described Plan.

### IV.   Factual Statement & Medical Support

9) Ms. Marshall is 61 years-of-age.  She began working for HFHS as a RN-Home Health Care on or about 10/22/12.  Ms. Marshall stopped working for HFHS on or about 11/1/17 due to the following non-exhaustive list of medical conditions:

3

- Advanced left hip degenerative arthritis;

- right hip arthritis;

- mild, sensory, primarily demyelinating, median mononeuropathy at the bilateral wrists;

- lumbosacral radiculopathy;

- rheumatoid arthritis involving multiple sites, unspecified rheumatoid factor presence;

- degenerative arthritic changes involving the facet joints in the lower lumbar spine, most notably at L5-S1 bilaterally; and

- fibromyalgia.

10) Ms. Marshall has not engaged in any substantial, gainful activity since her last day of work, 11/1/17. The Social Security Administration concluded that Ms. Marshall became disabled on 11/1/17, with benefits payable beginning 4/1/18. (LINA/Marshall Claim File).

11) As an insured employee under the Plan, Ms. Marshall applied to LINA to begin receiving long-term disability benefits as well as a waiver of life premium due to total disability, which claims LINA approved. LINA paid Ms. Marshall long-term disability benefits beginning approximately 5/15/18 through 5/15/20, at which time it denied her claim due to its

determination that she was able to perform sedentary work and was therefore no longer disabled per Plan terms.

12) Through the assistance of counsel, Ms. Marshall appealed LINA's denial on 9/21/20 and submitted the following medical evidence for review and consideration:

### A. Medical Evidence

13) On 3/2/20, Ms. Marshall treated with Dr. Delly (Caitlin Lopez, CNP) for the following:

> Extremity pain
> The pain is present in the back, left hand, left fingers, right hand, right fingers, left hip, left upper leg, left knee, left lower leg, left ankle, left foot, right hip, right upper leg, right knee, right lower leg, right ankle and right foot.  This is a chronic problem.  The current episode started more than 1 year ago.  The problem occurs constantly.  The problem has been gradually worsening.  The quality of the pain is described as burning (shooting, stabbing).  The pain is at a severity of 10/10.  The pain is severe.  Associated symptoms comments: Leg pain, pelvic pain. The symptoms are aggravated by activity, lying down and standing (bending, twisting, sitting, position).  She has tried acetaminophen, cold, heat, NSAIDS, oral narcotics and rest (PT, chiropractic manipulation, home exercises, injection, PT) for the symptoms. The treatment provided significant (oral narcotics, heat, rest) relief.
>
> Patient presents for bilateral hip pain.
>
> Xray bilateral hips:

5

> Slight asymmetric narrowing involving the joint space of the left hip. Configuration of both right and left femoral head consistent with CAM-type femoral acetabular impingement. Suspected subchondral geode associated with the right acetabulum.
> IMPRESSION: Mild degenerative findings as stated. . . .
>
> General: Tenderness present.
> Right hip: She exhibits decreased range of motion, decreased strength, tenderness and bony tenderness.
> Left hip: She exhibits decreased range of motion, decreased strength, tenderness and bony tenderness.
>
> Comments: Gait antalgic with cane. Strength 4+/5 lowers 5/5 uppers.
>
> Plan:
> 1. Referral given for Dr. Eberhardt for bilateral hip pain.
> 2. Lyrica 150mg TID
> 3. Continue to work on weight loss and overall health.
> 4. Continue to follow with Dr. Venkatram.
> 5. EMG uppers and lowers.
> 6. RTC in 8 weeks.

(Ex. 1of Administrative Appeal).

14) Ms. Marshall had a telemedicine visit with Dr. Delly (Rebecca Russo, CNP) on 4/21/20 to discuss hip pain:

> Assessment:
> Patient is a 60 yo female presenting for her right hip pain and feels it's worsening. Notes the lyrica is offering her benefit. She had a cancelled orthopedic appointment due to COVID. She is taking tramadol that offers benefit as well as heat. She also has history of rheumatoid arthritis and see rheumatology for this.

6

    1.     Recently refilled Lyrica 150mg TID for nerve pain.
    2.     Continue follow up with rheumatology.
    3.     Advised to make appointment with Dr. Eberhardt, regarding right hip.
    4.     Has appointment for EMG lowers next week.

(Ex. 1 of Administrative Appeal).

    15) On 5/4/20, Ms. Marshall treated with James Eberhardt, D.O.

(orthopaedic surgeon) pursuant to left hip pain:

> Patient comes in today with pain in left hip.
> Her left hip has been very sore for months. Limiting her walking daily. Uses a cane. Has RA and is on humera and has known neuropathy.
> Seeing Dr Delly . . .
>
> HARD TIME CLEANING AND DRESSING.
> Left Hip Exam: The thigh and calf are soft and supple to palpation. The skin is normal 80 of flexion before pelvic motion. Neutral extension. 5 external to 30 external rotation. Flexion with internal rotation reproduces the pain. There is no pain with hip motion. Sensation and motor are intact in the L2-S1 distribution. Capillary refill is brisk to the digits. And Extensor and flexor function to the toes and ankle is intact. Posterior tibial pulse is palpable. They walk with a limp. A cane is used. Images from the hospital show advanced arthritic changes.
>
> Education:
> • Heat Therapy. Advised patient to use hot compress/heating pad to involved area for 15-20 min 2-3x/day as needed and tolerated for pain relief.
>
> • Home Ex Program. Home exercise program given and patient verbalizes understanding.

7

> • Ice, Elevate & NSAIDS PRN. Patient advised to ice, elevate and NSAIDS as needed.
>
> The patient will be seen again as needed.  BMI is over so and weight reduction is stressed for consideration of surgery.

(Ex. 2 of Administrative Appeal).

16) A 5/18/20 lower extremities EMG demonstrated: "Electrodiagnostic evidence of subacute bilateral S1 radiculopathy affecting the lower extremities with prior denervation and reinnervation." (Ex. 2 of Administrative Appeal).

17) A 6/1/20 upper extremities EMG indicated:

> Abnormal study.
> 1. There is electrodiagnostic evidence of mild, sensory, primarily demyelinating, median mononeuropathy at the bilateral wrists (carpal tunnel, only if symptomatic).
>
> There is no electrodiagnostic evidence of any other mononeuropathy, plexopathy or radiculopathy affecting the upper extremities.
>
> There is no electrodiagnostic evidence of generalized peripheral polyneuropathy or inflammatory/necrotizing myopathy affecting the upper extremities.
>
> Clinical Correlation:
> These abnormal findings can account for portion of the numbness and tingling in the hands but not necessarily all the numbness and tingling on peripheral nerve and muscle basis.

(Ex. 1 of Administrative Appeal).

18)     On 6/2/20, Dr. Delly administered a left hip Marcaine and Kenalog injection to try and alleviate pain. (Ex. 1 of Administrative Appeal).

19)     On 6/8/20, Ms. Marshall treated with Dr. Climie (PCP) via video to discuss, among other matters, medication refills:

> Patient has been staying home mostly during this pandemic. She recently saw ortho specialist and was told she need a hip replacement but would have to lose about 65 pounds before they would do the surgery. Patient requesting to go back on phentermine to help with the weight loss. In addition she is requesting a home PT evaluation so they can show her what activities/exercise she can safely do at home. Patient had EMG testing done and was diagnosed with bilateral carpal tunnel as well as pinched nerves in her back causing her neuropathy and back pain.
> Patient states the Ambien is no longer helping with her insomnia. For the last month she has had intermittent episodes of room spinning sensation when she tilts her head back or moves it to the side too quick.

(Ex. 3 of Administrative Appeal).

20)     On 6/16/20, Ms. Marshall treated with Dr. Venkatram for a rheumatoid arthritis follow-up appointment.  Dr. Venkatram noted the following regarding diagnoses and treatment:

- Rheumatoid arthritis;
- bilateral hip osteoarthritis;
- positive ANA (antinuclear body);
- fibromyalgia;
- degenerative cervical and lumbar disease;
- edema; and

9

- colitis.

(Ex. 4 of Administrative Appeal).

21) On 6/29/20, Dr. Climie prepared a narrative report supporting Ms. Marshall's claim and entitlement to benefits:

> Melanie Marshall has been a patient of mine since 2007.
>
> I believe within a reasonable degree of medical certainty that Ms. Marshall has been and shall remain disabled from performing any gainful occupation.
>
> I disagree with the insurance's assessment that she could perform a sedentary occupation.
>
> Ms. Marshall has chronic medical conditions that will not improve. Her prognosis is poor.
>
> Ms. Marshall suffers from multiple medical conditions. She has rheumatoid arthritis which causes her to have pain and stiffness in multiple joints - hands/ fingers, knees, spine, ankles, elbows, feet/ toes.  She does see a rheumatologist for this condition and has been on multiple different medications over the years to try and control her symptoms.
>
> She also has significant osteoarthritis of both of her hips. She needs to have joint replacements but is not a good surgical candidate at this time.
>
> She has degenerative arthritis of her lower spine.
>
> She has some neuropathy of her lower legs.
>
> She has bilateral carpal tunnel syndrome.

> All of these conditions limit her abilities significantly. She ca not stand for more than 5 minutes at a time. She can only walk short distance at a time and needs to use assistive device often due to her back and hip pains. She is not able to sit for longer than 20-30 minutes at a time without having to get up and move around due to her hip and back pains. She would often have to lie down to get off her feet. She is not able to lift, carry, push or pull more than 10 pounds due to her arthritis and carpal tunnel.

(Ex. 5 of Administrative Appeal).

22) On 6/30/20, OHS ESR (ERYTHROCYTE SED RATE), WESTERGREN indicated a value of 56, reference range is 0-30 mm/hour. (Ex. 6 of Administrative Appeal).

Ms. Marshall's c-reactive protein test administered on the same date indicated 10.5. (Ex. 6 of Administrative Appeal).

23) 6/30/20 left hip x-rays demonstrated: "Slight joint space narrowing. Configuration of femoral head consistent with CAM-type femoral acetabular impingement. No fracture or dislocation." (Ex. 6 of Administrative Appeal).

24) Ms. Marshall treated with Dr. Delly on 7/8/20 for back pain:

> This is a chronic problem. The current episode started yesterday. The problem occurs constantly. The problem has been rapidly worsening since onset. The pain is present in the lumbar spine. The quality of the pain is described as shooting, stabbing and aching. Radiates to down the left leg. The pain is

11

>at a severity of 10/10. The pain is severe. The pain is the same all the time. The symptoms are aggravated by bending (walking). Associated symptoms include abdominal pain, headaches, leg pain, numbness, paresthesias and weakness. She has tried bed rest and heat (oral narcotics) for the symptoms. The treatment provided no relief.
>
>MRI 9/2019
>Degenerative arthritic changes involving the facet joints in the lower lumbar spine most notably at L5-S1 bilaterally. . . .
>
>Lumbar
>- Paraspinal tenderness
>- Extension and flexion worsens pain
>- facet loading is positive
>- rigidity noted
>    strength 5/5 aside from left lower extremity limited by pain and was inconsistent, strength Is at least 4+/5
>    ROM limited to left lower extremity.
>    Straight leg test positive on left side.
>
>Antalgic and flexed gait patient ambulates with a cane. Decreased sensation to left lower extremity compared to right lower extremity.
>
>Diagnoses:
>1. Lumbosacral radiculopathy (refer to PT and MRI)
>2. Numbness and tingling of left lower extremity
>3. Rheumatoid arthritis involving multiple sites, unspecified rheumatoid factor presence (CMS-hcc).

(Ex. 1 of Administrative Appeal).

25) On 8/7/20, Ms. Marshall treated with Dr. Delly for back pain and knee pain:

12

Back pain:
This is a chronic problem. The current episode started more than 1 year ago. The problem occurs constantly. The problem has been gradually worsening since onset. The pain is present in the lumbar spine. The quality of the pain is described as aching, burning, cramping, shooting and stabbing. The pain radiates to the left thigh, right knee, right thigh and left knee. The pain is at a severity of 9/10. The pain is severe. The pain is the same all the time. The symptoms are aggravated by bending, sitting, position, standing and twisting. Stiffness is present in the morning. Associated symptoms include leg pain, numbness, pelvic pain and tingling. She has tried bed rest, ice, heat and home exercises (oral narcotics, Injections, PT, acetaminophen) for the symptoms. The treatment provided moderate relief.

Knee Pain:
The incident occurred more than 1 week ago. The incident occurred at home. The injury mechanism was a fall. The pain is present in the left knee, right leg and left leg. The quality of the pain is described as aching, burning, cramping, shooting and stabbing. The pain is at a severity of 9/10. The pain is severe. The pain has been constant since onset. Associated symptoms include numbness and tingling. She reports no foreign bodies present. The symptoms are aggravated by movement (bending, sitting, position, standing, twisting). She has tried acetaminophen, heat, ice and rest (oral narcotics, PT, injection) for the symptoms. . . .

MRI of L spine 7/27/20:
Hypertrophic facet changes from L2-L3 through L5-S1
The patient called the spinal center but was unable to get in or make appointment. Was unable to go to therapy due to transportation issues. . . .

Left knee: She exhibits decreased range of motion and bony tenderness.  Tenderness found.

> Lumbar back: She exhibits decreased range of motion, tenderness, bony tenderness and pain.
>
> Comments: Lumbar
> - Paraspinal tenderness
> - Extension and flexion worsens pain
> - facet loading Is positive
> - rigidity noted
>
> Strength reduced to lower extremities due to pain. strength is at least 4+/5 . . .
>
> Decreased sensation more to the left lower extremity when compared to the right. Antalgic gait ambulates with cane.
>
> Diagnoses:
> Lumbar spondylosis . . .
>
> 1. Plan for lumbar medial branch block (LMBB, Facet blocks) at L3-4, L4-5 and L5-S1, if effective will repeat LMBB. Patient is made aware that LMBB is a diagnostic test not a treatment. However if LMBB are effective will proceed to lumbar radiofrequency ablation. Risks and benefit of procedures are discussed including but not limited to increased pain, bleeding, infection, nerve injury, headaches.
>
> 2. Continue tramadol 50 three times daily per rheumatologist.
>
> 3. Continue lyrica 150 mg three times daily.
>
> 4. Xray to left knee due to fall on knee.
>
> 5. Physical therapy when able.

(Ex. 1 of Administrative Appeal).

26) A 7/26/20 lumbar MRI demonstrated: "Hypertrophic facet changes from L2-L3 through L5-S1." (Ex's. 3 & 6 of Administrative Appeal).

27) On 8/8/20, Ms. Marshall had a left knee x-ray that did not demonstrate an acute osseous abnormality (Ex's. 3 & 6 of Administrative Appeal).

28) On 8/17/20 and 9/1/20, Dr. Delly administered a bilateral L3-S1 lumbar medial branch block. (Ex. 1 of Administrative Appeal).

29) On 9/23/20, Dr. Delly performed lumbar radiofrequency ablation. (LINA/Marshall Claim File).

30) A 10/5/20 left hip x-ray demonstrated chronic bilateral osteoarthrosis, more prominent on left and possible femoral acetabular impingement on left. (LINA/Marshall Claim File).

31) In a letter dated 2/17/21, LINA advised Ms. Marshall that it had two doctors (psychiatrist[1] and internal medicine) review her records in connection with her administrative appeal as well as a vocational counselor. LINA provided copies of said reports so Ms. Marshall's providers could review and comment if desired.

---

[1] Ms. Marshall's disability is not due to mental health complaints, so Dr. Taff's opinions will not be addressed.

32) On 10/22/20, LINA directed Ms. Marshall's records to Sasan Massachi, M.D. (internal medicine) who, in relevant part, determined:

- Lumbosacral radiculopathy: Moderate functional impairment based on physical exam findings and imaging studies. The claimant has intermittently positive SLR on the left, antalgic gait, use of cane for ambulation, and electrodiagnostic evidence of subacute bilateral Sl radiculopathy.

- Seronegative rheumatoid arthritis: No restrictions or limitations.

- Fibromyalgia: No restrictions or limitations.

- Bilateral hip osteoarthritis: Moderate functional impairment based on physical exam findings and imaging studies. Claimant's morbid obesity contributes to her hip conditions.

- Mild bilateral CTS: No restrictions or limitations. The EMG/ NCS demonstrated findings that could be consistent with mild CTS. However, without documented, clinically significant thenar muscle atrophy or loss of discriminatory sensation, carpal tunnel syndrome is not a definite indicator of functional impairment or activity restrictions. . . .

Based on provided medical records, Ms. Marshall is functionally limited to a moderate degree and is able to work with some activity restrictions:

Sitting: Unrestricted
Standing: Occasional, 30 min at a time, up to 2.5 hours per day
Walking: Occasional, 30 min at a time, up to 2.5 hours per day
Lifting: Occasional up to 10 lbs.

>Carrying: Occasional up to 10 lbs.
>Pushing: Occasional up to 10 lbs.
>Pulling: Occasional up to 10 lbs.
>Climbing stairs: Occasional
>Climbing ladders: Occasional
>Stooping: Occasional
>Kneeling: Occasional
>Crouching: Occasional
>Crawling: Occasional
>Reaching: Unrestricted at desk level, occasional below waist and overhead Using lower extremities for foot controls: Unrestricted
>Fine manipulation: Unrestricted
>Simple and firm grasping: Unrestricted. . . .
>
>Dr. Venkatram identified, at 10/21/2020 1:58:31 PM, that the claimant was seen in December 2019 and again in March 2020, with a history of rheumatoid arthritis, and notes that the claimant has difficulty/restrictions performing ADLs. Dr. Venkatram is unable to provide a definite recommendation as to the claimant's work abilities, but notes that the claimant does have difficulties even with ADLs.

(LINA/Marshall Claim File).

33) A 10/26/20 transferrable skills analysis concluded that based on Dr. Massachi's restrictions, Ms. Marshall was able to work as a telephonic triage nurse and a utilization-review coordinator. (LINA/Marshall Claim File).

34) On 3/6/21, Ms. Marshall participated in a telephonic vocational assessment with Elizabeth Pasikowski, MRC, CRC. After

17

reviewing Ms. Marshall's file and interviewing her, Ms. Pasikowski offered the following vocational opinions:

> **SUMMARY:**
> The Transferable Skill Analysis performed by Nicole Surmacy MS CRC utilized the following restrictions:
>
>> Unrestricted – sit, reach at desk level, fine manipulate, simple and grasp, use lower extremities for the time period in question.
>> Occasionally – stand 30 minutes at a time, up to 2.5 hours/day, walk 30 minutes at a time, up to 2.5 hours/day, reach below waist and overhead, lift/carry/push/pull up to 10 lbs. climb stairs and ladders, stoop, kneel, crouch, crawl
>
> These restrictions are based on a file review by Dr. Massachi with a diagnosis of Fibromyalgia.
>
> These restrictions, as based on Dr. Climie's opinion are not appropriate.
>
>> I disagree with the insurance's assessment that she could perform a sedentary occupation.
>> She has osteoarthritis of both hips, degenerative arthritis of her lower spine, neuropathy of her lower legs, rheumatoid arthritis. She needs to have joint replacements but is not a good surgical candidate at this time.
>
> If Dr. Climie's opinion is determined to be appropriate, then Ms. Marshall is unemployable and would not be able to perform either of the positions listed in the Transferable Skills Analysis.

(LINA/Marshall Claim File).

35)   LINA's medical reviewer, Dr. Massachi, authored two addendums (11/3/20 and 2/11/21) in connection with Ms. Marshall's updated records that demonstrated positive bone scan findings and abnormal lab values.  Despite ongoing objective findings documenting claimed conditions and functional impairment, Dr. Massachi stated that the information did not change his previous opinions.

36)   On 3/29/20, LINA formally denied Ms. Marshall's long-term disability and waiver of life premium claims based solely on Dr. Massachi's opinions and the transferrable skills analysis that was predicated on his opinions.

37)   LINA's actions have now foreclosed all avenues of administrative appeal and this matter is ripe for judicial review.

38)   Because valid, objective, and well-supported proofs establish that Ms. Marshall has continued to meet and satisfy the Plan's definition of disability for LTD and waiver of premium purposes as of 5/17/20 until the date that Ms. Marshall turns 65, she is entitled to ongoing indemnity monthly benefits in the amount of $2,063.00, which is the net LINA benefit after crediting her Social Security Disability benefit.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

- A) That this Court enter judgment in Ms. Marshall's favor against LINA and order the immediate payment of long-term disability benefits as well as a waiver of life premium;

- B) That this Court order LINA to pay Ms. Marshall prejudgment interest pursuant to *Horn v. McQueen*, 353 F. Supp. 2d 785 (2004) and post-judgment interest in accordance with M.C.L. § 600.6013 and 600.6455;

- C) That this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

- D) That Ms. Marshall recover all relief to which he may be entitled, along with the costs of litigation.

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:  s/Ilana S. Wilenkin
Ilana S. Wilenkin (P61710)
Plaintiff's attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; fax (248) 932-1734
ilana@lawsmf.com

Dated: June 23, 2021